# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6676 | **DATE** | August 7, 2001 |
| **CASE TITLE** | Doug Sutton, et al. v. MarchFirst, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss [ 26-1] is denied. See attached for details. Enter Memorandum Opinion.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| x | Notices MAILED by judge's staff. | | AUG 0 9 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to _____ | | | |
| KAM | courtroom deputy's initials | FILED FOR DOCKETING Date/time received in Central Clerk's Office 3:54 | date mailed notice KAM mailing deputy initials | |

(Reserved for use by the Court)

00-6676.011-JCD                                    August 6, 2001

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOUG SUTTON and PRESCOTT )
NOTTINGHAM, on behalf of )
themselves and all others )
similarly situated, )
)
      Plaintiffs, )
)
    v. )
) No. 00 C 6676
ROBERT F. BERNARD, )
ROBERT T. CLARKSON, and )
BERT B. YOUNG, )
)
      Defendants. )

DOCKETED
AUG 0 9 2001

## MEMORANDUM OPINION

Before the court is defendants' motion to dismiss the consolidated class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is denied.

## BACKGROUND

Plaintiffs' consolidated class action complaint (the "complaint"), filed May 3, 2001, alleges securities fraud against three officers of Marchfirst, Inc. ("Marchfirst").[1] Marchfirst is an Internet consulting corporation headquartered in Chicago. The

---

[1] The initial complaint in this action was filed on October 26, 2000. By an order dated February 7, 2001, the action was consolidated with case numbers 00 C 6687, 00 C 6785, 00 C 6812, 00 C 6821, 00 C 6908, 00 C 7073, 00 C 7198, 00 C 7245, and 00 C 7741, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

class consists of individuals who bought Marchfirst securities between March 23, 2000 and November 20, 2000 (the "Class Period"). Plaintiffs allege that defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated under that section, 17 C.F.R. § 240.10b-5, and § 20(a) of the 1934 Act, 15 U.S.C. § 78t(a).

The following facts, drawn from the complaint, are taken as true for purposes of this motion. On March 1, 2000, a company called Whittman-Hart merged with USWeb/CKS Corporation and began trading as a single company on the NASDAQ national exchange under the name "Whit." On March 23, 2000, the merged company announced its new name, Marchfirst, and began trading under its new symbol, "MRCH." About seven months later, in October 2000, Marchfirst revealed that it was experiencing a significant shortfall in revenues, that its third-quarter earnings per share were $0.01 instead of the $0.20 it had forecast, and that it had experienced extensive problems during the Class Period collecting payment from certain customers. Marchfirst announced that as a result, it was writing off $45 million as bad debt. On April 12, 2001, Marchfirst filed for Chapter 11 bankruptcy relief, and less than two weeks later, it obtained an order to convert the Chapter 11 filing for reorganization to a Chapter 7 filing for liquidation.

Defendant Robert F. Bernard was Chairman of the Board of Directors, Chief Executive Officer, and President of Marchfirst.

He had held the same positions at Whittman-Hart. Bernard resigned from Marchfirst on March 12, 2001. In 1999, Whittman-Hart had eliminated Bernard's salary and cash bonuses, leaving stock options as his sole source of compensation. That year, he received 200,000 stock options with a potential value of $9,217,759, assuming a 10% annual rate of stock price appreciation over the option term. As of March 31, 2000, Bernard owned 12,832,535 shares of Marchfirst stock. Marchfirst's proxy dated May 24, 2000 stated that it was expected that Bernard would receive a salary in 2000, although stock options would continue to be a primary component of his compensation.

Defendant Robert T. Clarkson was Marchfirst's Chief Operating Officer from March 2000 until his resignation in October 2000. Clarkson had served as Chief Operating Officer of USWeb/CKS from November 1999 until March 2000. Clarkson owned options to purchase 250,326 shares of Marchfirst's stock.

Defendant Bert B. Young was Chief Financial Officer and Treasurer of Marchfirst until his resignation in October 2000. In 1999, Whittman-Hart had granted Young 42,166 stock options with a potential value of $1,685,908, assuming a 10% annual rate of stock price appreciation over the option term.

The complaint alleges that defendants misled the investing public and thereby artificially inflated the price of Marchfirst's stock by publicly issuing materially false and misleading

statements and omitting to disclose material facts necessary to make those statements not false and misleading. In particular, plaintiffs contend that:

- Defendants claimed that by the end of the second quarter of 2000, the integration of Whittman-Hart and USWeb/CKS was 85% to 90% complete, when in reality, integration efforts were failing and defendants never had a plan for integrating the two companies.

- As a result of the integration problems, Marchfirst's computer systems generated inaccurate financial reports. Bernard knowingly used this inaccurate data to form the basis of statements he made to the media and financial analysts, which he included in SEC filings, regarding Marchfirst's revenue, accounts receivable, earnings, performance projections, and integration status.

- Throughout the class period, defendants boasted of having hired new consultants who were at the top of their field, but failed to disclose that Marchfirst had no work for these consultants or its existing employees to perform.

- Defendants falsely inflated Marchfirst's reported revenues and earnings by issuing phony invoices, strong-arming customers to purchase unnecessary services, and invoicing customers for services that Marchfirst had not performed or had performed inadequately.

- Defendants manipulated investments in companies in which they and Marchfirst had an equity interest to create the false appearance that Marchfirst was generating revenue.

- Defendants reported assets, revenue, and earnings that were fraudulently generated in violation of Generally Accepted Accounting Principles ("GAAP").

Defendants move to dismiss the complaint on the ground that the allegations fail to meet the requirements for pleading

securities fraud claims under the Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4 <u>et seq.</u> Defendants also argue that, because plaintiffs fail to allege a predicate violation under § 10(b) of the 1934 Act, plaintiffs' § 20(a) claims must be dismissed.²

**DISCUSSION**

Section 10(b) of the Securities Exchange Act of 1934 provides that it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange] Commission may prescribe." 15 U.S.C. § 78j(b). One such rule is Rule 10b-5, which prohibits the making of any untrue statement of material fact or the omission of a material fact whose omission would render misleading statements made in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5. To state a valid Rule 10b-5 claim, a plaintiff must allege that: (1) the defendant made a false statement or omission, (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff justifiably relied, (6) and that the false

---

²/ We have reviewed the motion, all materials submitted by defendants in support of the motion, and the complaint, and we have determined that further briefing (a response and a reply) is not necessary.
  Defendants attach a number of exhibits to their motion. Although we may consider them without converting the motion to a summary judgment motion, either by taking judicial notice of them or because the documents are referred to in the complaint and are central to plaintiffs' claim, we do not find it necessary to consider them.

statement proximately caused the plaintiff's damages. See Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (7th Cir. 1997); Stransky v. Cummins Engine Co., 51 F.3d 1329, 1331 (7th Cir. 1995).

Because a claim under § 10(b) involves fraud, Federal Rule of Civil Procedure 9(b) requires a plaintiff to state with particularity the circumstances constituting such a claim. Moreover, the Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides that where plaintiffs allege that the defendant made a misleading statement or omission, the complaint must specify each such statement or omission and explain why it is misleading. See 15 U.S.C. § 78u-4(b)(1). The PSLRA also heightened the pleading standard for scienter, so that plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

## A. Material Misstatements or Omissions

### 1. Actionable False Statements

Whether a misstatement or omission is "material" depends on how it affects an investor's perception of a security. If there is a substantial likelihood that disclosure of the information would have been viewed by the reasonable investor as significantly altering the total mix of information, the statement is material. See Searls v. Glasser, 64 F.3d 1061, 1065-66 (7th Cir. 1995).

Defendants argue that many of the allegedly misleading statements were mere "puffery" and therefore not material. They are correct with respect to some of the statements. For example, plaintiffs quote a statement Bernard made regarding the Whittman-Hart/USWeb merger: "There are dozens of players in the internet professional services arena but most compete within [certain] narrowly defined niches . . . . However, Marchfirst has expertise in all of these areas, allowing us to immediately and profoundly impact our clients' performance. . . . The combination of our two dynamic cultures and their extraordinary success stories gives us amazing competitive strengths." (Complaint, ¶ 64.) Such vague, general statements of optimism are not material, and are thus not actionable under § 10(b). See Searls, 64 F.3d at 1066 (stating that the lack of specificity of optimistic rhetoric precludes it from being considered material).

Nevertheless, the complaint also contains allegedly misleading statements that were objectively verifiable and therefore actionable. For instance, plaintiffs allege that Marchfirst's Form 10-K filed on March 30, 2000 falsely stated that its internal information systems were "currently operating without any significant interruptions." (Complaint, ¶¶ 69, 72-73.) Another such allegedly false statement is Bernard's statement in a July 25, 2000 press release that "integration moved ahead of schedule in the second quarter." (Id., ¶¶ 79, 86.)

In addition, plaintiffs allege that defendants made several material misstatements and omissions to securities analysts. (E.g., id., ¶¶ 76, 95, 97, 103.) Defendants argue that many of the statements contained in analyst reports cited in the complaint may not serve as a basis for a § 10(b) claim because they are not attributable to defendants, as certain reports do not refer to specific information provided by any of the defendants or even Marchfirst management generally. We will not reach the issue at this juncture because plaintiffs have met their pleading burden based on other statements that are clearly attributed to defendants. We note, however, that courts are divided as to whether quotations or paraphrases of corporate spokesmen's statements to analysts are actionable where the corporation is not alleged to have controlled what the analyst wrote. See In re Baan Co. Sec. Litig., 103 F. Supp. 2d 1, 13 n.19 (D.D.C. 2000) (citing cases).

Plaintiffs allege that Bernard provided inaccurate earnings guidance to analysts in the closing weeks and days of the third quarter of 2000. (Complaint, ¶ 107.) Defendants contend that such statements are not actionable because plaintiffs do not plead that Bernard did not genuinely believe what he was saying or that the statements lacked a reasonable basis.[3] Defendants are incorrect.

---

[3] Forward-looking statements are actionable where the person making the statement did not make the statement in good faith or had no reasonable basis for making it. See Wielgos v. Commonwealth Edison Co., 892 F.2d 509, 512-13 (7th Cir. 1989); Snap-On Inc. v. Ortiz, No. 96 C 2138, 1999 WL 592194, at *7 (N.D.

The complaint does allege facts that support the inference that Bernard's statements lacked a reasonable basis. (Id., ¶¶ 24-27, 31-63.)

Defendants also argue that plaintiffs fail to allege specific facts showing why defendants' alleged statements were false when made. They contend that plaintiffs plead "fraud by hindsight" by relying in large part on certain after-the-fact comments made by defendants, securities analysts, and others near the end or after the end of the Class Period. Although defendants are correct that statements made at or after the end of the Class Period cannot be used to show that what was said earlier was false or misleading, it is clear that plaintiffs do not rely solely on such statements. Plaintiffs also allege specific, contemporaneous facts showing why the purported statements were false or misleading. (Id., ¶¶ 24-27, 31-63.)

### 2. GAAP Violations

The complaint alleges that Marchfirst issued financial reports during the Class Period that did not comply with GAAP and that defendants "engaged in a series of manipulative accounting practices [that] violated [GAAP], created a false impression about the value of Marchfirst's net assets, and created the false impression that the demand for Marchfirst's services continued to

---

Ill. Aug. 3, 1999) (Grady, J.); Kas v. Caterpillar, Inc., 815 F. Supp. 1158, 1170 (C.D. Ill. 1992).

be robust." (Id., ¶¶ 123-164.) Specifically, plaintiffs allege that defendants caused Marchfirst to violate GAAP by:

- causing Marchfirst to recognize and report revenue from certain transactions even though "the 'revenue' was not earned, services were not rendered, the collectibility of the sales price was not reasonably assured and the Company had not substantially performed the obligations which entitled it to the benefits represented by the revenue;"

- improperly overstating revenue and income growth when using the percentage-of-completion method of recording revenues by inflating the costs expended on fixed-price contracts;

- failing to establish an adequate reserve in financial statements to account for probable uncollectible accounts receivable;

- failing to timely record a loss due to an impairment in the value of Marchfirst's intangible assets; and

- failing to disclose related party transactions because, inter alia, such transactions cannot be presumed to be carried out at arms' length.

(Complaint, ¶¶ 135, 138, 149, 150, 160.)

Defendants argue that GAAP violations do not constitute actionable securities fraud, but this contention is unpersuasive, at least with respect to the allegations regarding the overstatement of revenues.[4] A company's overstatement of revenues in violation of GAAP can constitute a false or misleading statement

---

[4] Defendants also argue that "plaintiffs completely fail to allege facts creating a strong inference that [defendants] knew or could have known of the alleged errors." (Defendants' Motion to Dismiss, App. B, Tab A, at 25.) This argument is without merit; see our discussion infra of allegations regarding scienter.

of material fact necessary to establish securities fraud. See In re First Merchants Acceptance Corp. Sec. Litig., No. 97 C 2715, 1998 WL 781118, at *10 (N.D. Ill. Nov. 4, 1998); Clark v. TRO Learning, Inc., No. 97 C 8683, 1998 WL 292382, at *2 (N.D. Ill. May 20, 1998). As for the allegations regarding the timing of recording losses, they might not constitute actionable securities fraud. See DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990) ("If all that is involved is a dispute about the timing of the writeoff, based on estimates of the probability that a particular debtor will pay, we do not have fraud; we may not even have negligence."). Nonetheless, we need not parse through each and every alleged misstatement contained in the complaint to determine if it is actionable. It is sufficient for pleading purposes that at least some of the GAAP violations (and other material misstatements and omissions) alleged by plaintiffs are actionable.

### 3. Group Pleading Doctrine

Defendants assert that plaintiffs' claims against defendant Clarkson are deficient because the complaint does not identify him personally as making a single misstatement or omission during the Class Period. Defendants also argue that, to the extent plaintiffs assert that Clarkson is liable for certain misstatements or omissions under the "group pleading" doctrine, the doctrine is

incompatible with the heightened requirements of the PSLRA and Central Bank v. First Interstate Bank, 511 U.S. 164 (1994).[5]

The Seventh Circuit has not ruled on the applicability of the group pleading doctrine following the enactment of the PSLRA. Although some courts have held that the doctrine did not survive the enactment of the PSLRA, many courts have continued to rely on it. See, e.g., Danis v. USN Communications, Inc., 73 F. Supp. 2d 923, 939 n.9 (N.D. Ill. 1999); In re Oxford Health Plans, Inc., 187 F.R.D. 133, 142 (S.D.N.Y. 1999); In re BankAmerica Corp. Sec. Litig., 78 F. Supp. 2d 976, 987 (E.D. Mo. 1999); In re Digi Int'l, Inc. Sec. Litig., 6 F. Supp. 2d 1089, 1101 (D. Minn. 1998).

While it is true that pursuant to Central Bank, there can be no aider and abettor liability under § 10(b) or Rule 10b-5, grouping defendants together in a complaint while pleading primary liability does not in itself make the allegations defective. And absent guidance from the Seventh Circuit, we are unwilling to hold that the PSLRA abolished the group pleading doctrine. "Although pleading securities fraud after the PSLRA can no longer be described as merely 'notice pleading,' courts must be careful not to set the hurdles so high that even meritorious actions cannot

---

[5] The "group pleading" doctrine allows plaintiffs to rely on the presumption that certain statements of a company, such as financial reports, prospectuses, registration statements, and press releases, are the collective work of those high-level individuals with direct involvement in the everyday business of the company. See Danis v. USN Communications, Inc., 73 F. Supp. 2d 923, 939 n.9 (N.D. Ill. 1999); In re Oxford Health Plans, Inc., 187 F.R.D. 133, 142 (S.D.N.Y. 1999).

survive a motion to dismiss. Such a regime would defeat the remedial goals of the federal securities laws." In re Petsmart, Inc. Sec. Litig., 61 F. Supp. 2d 982, 988 (D. Ariz. 1999).

Plaintiffs have alleged a number of misstatements and omissions in "group-published" documents, such as Marchfirst's press releases and SEC filings. (E.g., Complaint, ¶¶ 69, 72, 79.) The group pleading doctrine is generally construed as applying only to high-level corporate officers and directors with direct involvement in the day-to-day business of the company. See In re Baan Co., 103 F. Supp. 2d at 17-18. Here, plaintiffs have set forth Clarkson's role during the Class Period as Chief Operating Officer of Marchfirst and have alleged that defendants were responsible for the group-published statements issued by Marchfirst. The complaint states that "[d]efendants were top executives of Marchfirst and ran Marchfirst as 'hands-on' managers," that "[d]efendants closely monitored the performance of Marchfirst's business via reports [of] Marchfirst's Finance Department," and that "[e]ach of the defendants . . . directly participated in the management of Marchfirst [and] was directly involved in the day-to-day operations of Marchfirst at the highest levels." (Complaint, ¶¶ 24-26.) Pursuant to the group pleading doctrine, these allegations are sufficient to allege Clarkson's (and the other defendants') primary liability for actionable "group published" documents.

## B. **Scienter**

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Scienter is established (1) by demonstrating that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. See In re Anicom Inc. Sec. Litig., No. 00 C 4391, 2001 WL 536066, at *5 (N.D. Ill. May 18, 2001); In re Nanophase Techs. Corp. Sec. Litig., No. 98 C 7447, 2000 WL 1154631, at *6 (N.D. Ill. Aug. 14, 2000); Rehm v. Eagle Fin. Corp., 954 F. Supp. 1246, 1253 (N.D. Ill. 1997).

Defendants contend that the complaint fails to allege facts showing that they had the motive to commit the alleged fraud. We disagree. The complaint sets out in detail defendants' Marchfirst stock and stock options. Thus, plaintiffs have sufficiently alleged that defendants had the opportunity to profit from the alleged fraud. Defendants argue that there are no allegations in the complaint that they realized a concrete benefit from the alleged fraud. However, defendants may have hoped to profit from their false statements--and thus have had the motive to falsify-- whether or not they actually realized a profit.

Plaintiffs can also rely on allegations of facts that constitute strong circumstantial evidence of conscious misbehavior

or recklessness. "Reckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Rehm, 954 F. Supp. at 1255. Defendants argue that plaintiffs have failed to plead facts supporting a finding that defendants' conduct amounted to recklessness. At most, they contend, the allegations are nonactionable claims of mismanagement and rest on hindsight.

Plaintiffs allege the following facts that are relevant to scienter. Defendants ran Marchfirst as "hands-on" managers and closely monitored the company's business via reports generated by Marchfirst's Finance Department on a weekly and monthly basis. (Complaint, ¶¶ 24, 25.) Each defendant directly participated in the management of Marchfirst, was directly involved in the day-to-day operations of the company at its highest levels, and was privy to proprietary information concerning Marchfirst's business, operations, growth, financial statements, and financial condition. (Id., ¶ 26.) Defendants had access to internal documents concerning Marchfirst's inability to integrate the operations of USWeb/CKS and Whittman-Hart, inability to properly perform services for its customers, and use of improper means to inflate reported revenue. (Id., ¶ 19.)

Defendants controlled the content of public statements issued by or on behalf of Marchfirst. (Id., ¶ 18.) Defendants claimed that by the second quarter of 2000, integration of the two merged companies was 85 to 90% complete, when they knew or recklessly disregarded that this was not the case. (Id., ¶ 31.) Defendants were part of an "executive team" that acknowledged such integration problems in memos. (Id., ¶ 34.) They made statements and predictions regarding Marchfirst's operations and financial condition while knowing, or recklessly disregarding, that they did not have timely or accurate information about such matters because of the systems integration problems. (Id., ¶¶ 34, 37, 40-41.) In May 2000, Bernard secretly ordered Marchfirst executives to reassess the company's information systems and to devise a schedule for modifying the system so that the merged companies' systems could be integrated properly. (Id., ¶ 42.)

Defendants were aware of numerous customer complaints and refusals to pay due to nonperformance or poor performance because branch employees updated them as often as daily on Marchfirst's larger projects. (Id., ¶¶ 47-50.) They also knew that Marchfirst was having problems retaining existing customers and obtaining new customers. (Id., ¶ 51.) Moreover, in order to create an appearance of a growing business, defendants "actively tout[ed]" their recruitment of additional consultants when they knew that many of the consultants had little or nothing to do. (Id., ¶¶ 51-

54.) They also devised schemes to artificially inflate revenue, such as billing customers for services not rendered or for additional services beyond those requested, and using an "equity for services" arrangement. (Id., ¶¶ 54, 56-60.)

In addition, plaintiffs bolster their scienter allegations by claiming GAAP violations. "Although it is true that a violation of GAAP in itself will generally will not be sufficient to establish fraud, when combined with other circumstances suggesting fraudulent intent, however, allegations of improper accounting may support a strong inference of scienter." Marksman Partners, L.P. v. Chantal Pharm. Corp, 927 F. Supp. 1297, 1313 (C.D. Cal. 1996) (citation omitted). We find that plaintiffs have alleged sufficient facts to survive a motion to dismiss on the issue of scienter.

In sum, we find that the policy considerations of the PSLRA are met here. Plaintiffs' complaint contains enough detail to satisfy us that this is not the "fishing expedition" type of abusive securities fraud complaint that the requirements of the PSLRA were designed to prevent. While the complaint may include allegations that standing alone would be subject to dismissal under heightened pleading standards, many other allegations of the complaint withstand scrutiny. Accordingly, there is no basis for dismissal.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss the consolidated class action complaint is denied.

DATE:   August 6, 2001

ENTER:  _____
        John F. Grady, United States District Judge