# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DOUG SUTTON and PRESCOTT NOTTINGHAM, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>ROBERT F. BERNARD, ROBERT T. CLARKSON, and BERT B. YOUNG,<br><br>      Defendants. | No. 00 C 6676 |

## MEMORANDUM OPINION

This is a class action in which the shareholder plaintiffs allege securities fraud against three officers of Marchfirst, Inc. ("Marchfirst"), a Chicago-based consulting corporation. The complaint alleges that defendants artificially inflated the price of Marchfirst's stock by publicly issuing materially false and misleading statements and failing to disclose material facts necessary to make those statements not false and misleading. Marchfirst, which was named as a defendant, filed for bankruptcy five and one-half months after the complaint was filed.

The court has under advisement the motion of class counsel for final approval of a proposed class settlement and an award of attorneys fees and expenses. We believe the $18,000,000 settlement

is reasonable, considering the uncertain outcome of the legal and factual questions that would be involved in a trial of the case, as well as the problems that would be encountered in collecting a judgment in excess of the proposed settlement amount. No class member has objected to the settlement, and we believe it is in the best interest of the class that it be approved. Accordingly, we will grant final approval of the settlement.

What remains, then, is the matter of fees and expenses. We will deal first with the expenses.

**Request for Reimbursement of Expenses**

The original request of class counsel was for reimbursement in the amount of $757,274.23, which covered the expenses of fifteen different law firms.[1] We had questions about some of the expense

---

[1] See Ex. 1 to Aff. of Brad N. Friedman in Support of Plaintiffs' counsels' Supplemental Petition for Attorneys' Fees and Reimbursement of Costs and Expenses (Oct. 21, 2005). We were surprised by the submission of this large number of requests, since we had made it clear at the time we appointed lead counsel for the class, Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss"), and local counsel, Miller Faucher and Cafferty LLP, that these two firms were to handle all of the legal work for the class. Our intention was to avoid the inevitable problem of duplication that arises when multiple firms are involved in the representation. During the progress of the case, none of the additional firms had appeared before us, and we were never informed of their participation. In our first Order of May 4, 2006, we asked for an explanation of the use of these additional firms. Lead counsel filed a response, Aff. of Brad N. Friedman (June 9, 2006), explaining that the case involved more document review than Milberg Weiss was able to handle by itself and that the additional firms did necessary work that was not done by Milberg Weiss. Therefore, there was no additional expense to the class. The problem with this explanation is that, as far as the work is concerned, the voluminous time records make it impossible for the court to verify that there was no duplication. It is that very impossibility that was the reason for our limitation on the number of firms. Because the total fee we award will be a percentage of the settlement, rather than a lodestar fee, it is true that the additional lawyers will not result in an increase in the fee. It is the expenses for which reimbursement is sought that give rise to the problem. Expenses incurred in connection with duplicate or overlapping work are likely to be unnecessary.

items, and, in our first Order of May 4, 2006 (the "First Order of May 4") we requested further information. It was provided by counsel on June 22, 2006.[2] As part of the response, some of the reimbursement requests were reduced, with the revised total being $701,824.01.[3] But we believe further reductions are required.

The cost of computer-assisted legal research is included in attorneys fees and is not separately recoverable as an expense. <u>Montgomery v. Aetna Plywood Inc.</u>, 231 F.3d 399, 409 (7th Cir. 2000). Therefore, the following amounts claimed by the following law firms for computer research will be deducted from the requested expense award:

| Firm | Amount |
|---|---|
| Milberg Weiss | $22,348.00 |
| Miller Faucher and Cafferty | 522.70 |
| Berger & Montague | 4,335.22 |
| Shiffrin & Barroway | 3,400.00 |
| Wolf Haldenstein Adler Freeman & Herz | 4,029.61 |
| Faruqi & Faruqi | 1,230.00 |
| Futterman & Howard | 232.00 |
| Bernard M. Gross | 684.70 |
| Marc S. Henzel | 78.24 |
| Lowenstein Sandler PC | 456.60 |
| Total: | $37,317.07 |

Another expense we questioned in our First Order of May 4 was secretarial overtime. We observed that "[t]his is the kind of cost that is normally included in a lawyer's overhead. In order to recover this expense, counsel should provide case authority for the

---

[2]/ Aff. of Brad N. Friedman in Support of Plaintiffs' Counsel's Submission of Additional Information Concerning Their Unreimbursed Expenses.

[3]/ <u>Id</u>. at Ex. 5.

allowance." (First Order of May 4 at 3.) In their response, counsel cited two district court cases, one from the Eastern District of Pennsylvania and the other from the District of Colorado. (Response of June 22, 2006 at 9, ¶ 24.) Both cases allowed reimbursement for secretarial overtime, but without discussion and without providing any rationale. In their research that came up with the Pennsylvania and Colorado cases, it would have been impossible for counsel not to have found two cases that are squarely on point and closer to home. In <u>In re Abbott Laboratories Omniflox Products Liability Litigation</u>, No. 94 C 2469, 1997 WL 162891, at * (N.D. Ill. Mar. 26, 1997), Judge Aspen of this court denied a request for reimbursement of secretarial overtime: "[S]ecretarial overtime is overhead and will not be granted." Judge Aspen cited <u>Spicer v. Chicago Board Options Exchange, Inc.</u>, 844 F. Supp. 1226, 1261 (N.D. Ill. 1993), where Judge Will of this court denied reimbursement for secretarial overtime because "as with all clerical salaries,this is part of overhead."

The decisions of Judges Aspen and Will are obviously in accord with our own preliminary impression, and we will deny the following requests for secretarial overtime:

```
Milberg Weiss              $4,125.77
Lowenstein Sandler             25.00
                  Total:  $4,150.77
```

We are disappointed that counsel did not cite the <u>Abbott Laboratories</u> and <u>Spicer</u> cases, especially since the firm that was

denied reimbursement for secretarial overtime by Judge Aspen in Abbott Laboratories was Miller Faucher and Cafferty, local counsel in this case. Rule 3.3(a)(3) of the Illinois Rules of Professional Conduct provides that "a lawyer shall not ... fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Our Local Rule 83.53.3 adopts the same language. This matter of secretarial overtime is an illustration of the fact that "class actions are rife with potential conflicts of interest between class counsel and class members," Mirfasihi v. Fleet Mortgage Corp., 356 F.3d 781, 785 (7th Cir. 2004).

It was necessary for counsel to incur expenses of travel, meals and hotel stays in connection with trips to court, to depositions and to places where documents had to be reviewed on site. We have requested information about the travel expenses and meals, and, assuming the trips and meals were necessary (see n.1, supra) the amounts were reasonable. (Air travel, for instance, was by coach unless in some unusual circumstance a business class fare was cheaper). We are, however, concerned about the average hotel bill incurred by Milberg Weiss. It was $450.00, whereas the bills incurred by all other counsel were in the area of $200 to $250. In response to an inquiry we made of Milberg Weiss, we are informed that their total hotel bills were $11,722.53. We will exclude

approximately 50 percent of that amount, or $5,800.00, in order to bring Milberg Weiss's reimbursement into line with that of their colleagues. As Judge Aspen remarked in <u>Abbott Laboratories</u>, "[n]o first-class airfare, expensive hotels, or lavish meals were reasonably necessary to discovery. Attorneys should not view representation of the consolidated plaintiffs as an opportunity to travel in style." 1997 WL 162891, at *2.

In its original fee petition, Milberg Weiss requested reimbursement for fees it paid to experts, consultants and other professionals. These were stated to be a total of $106,737.06, with a reference to an "Exhibit 4" to the petition. Exhibit 4 is simply a list of various categories of expenses and their amounts. One category is "Professional Fees (Expert/Consultant)" in the amount of $106,737.06, without any detail. In our First Order of May 4, we asked counsel to explain this expense item.[4] Counsel's response of June 22, 2006 ignored our specific inquiry as to the identity of the experts, referred again to "Exhibit 4," and stated that "[d]ue to an accounting oversight," the fee petition had included as an expense a payment that Milberg Weiss had made to the law firm of Lowenstein Sandler for legal services rendered in connection with the bankruptcy issues in the case. The payment was said to be approximately $15,000.00. Milberg Weiss advised that it

---

[4] "What experts were retained, what were they paid, and what did their services contribute to the plaintiffs' case? Copies of the experts' reports and invoices should be provided." (First Order of May 4, 2006 at 2.)

"no longer seeks to be reimbursed for that expense," and reduced the claim for experts, consultants and other professionals from $106,736.06 to $89,222.90. (Aff. of Brad N. Friedman in Support of Plaintiffs' Counsel's Submission of Additional Information Concerning Their Unreimbursed Expenses at 4 & Ex. 2.) (The legal bill of Lowenstein Sandler was actually $17,514.16). Still, however, we had no listing of the experts, no explanation of their services, no copies of their reports and no invoices. We needed this information in order to evaluate the reduced claim of $89,222.90, and a member of our staff made three telephone requests of counsel to provide a copy of the missing "Exhibit 4." Finally, on June 29, 2006, Exhibit 4 was hand-delivered to chambers. It consists of a sheaf of copies of market studies and other reports of properly reimbursable work done by experts and service providers, along with copies of their invoices. But also included are invoices totaling $15,047.61 from the law firm Tishler & Wald, Ltd. for services rendered in connection with the litigation between the class and Marchfirst's bankruptcy trustee. The work described in these invoices consisted entirely of legal services, such as court appearances, legal research, conferences with other counsel, drafting of pleadings and the like. If we were to allow this charge as an "expense," the effect would be to increase the legal fees we might otherwise award. Counsel eliminated the legal fees of Lowenstein Sandler in response to our May 4 inquiry, and we

are puzzled as to why they did not also eliminate the legal fees of Tishler & Wald.

The $15,047.61 charge for the legal services of Tishler & Wald, Ltd. will be excluded from expense reimbursement. Those services will be covered by the amount awarded for attorneys fees.

Counsel pared their original $757,274.23 request by $55,450.22 in response to our inquiries, resulting in a revised request of $701,824.01. The additional reductions we have made in this opinion come to another $62,315.45,[5] lowering the $701,824.01 to $639,508.56. This will be the amount of the expense award.

## **Attorneys Fees**

As we indicated in our Second Order of May 4, 2006, we agree with class counsel that their fees should be based on a percentage of the recovery rather than on the time they have spent.[6] This brings us to the question, percentage of what? Counsel seek 28 percent of the total settlement amount of $18,000,000. The request makes no sense because it would allow as attorneys fees a percentage of the $639,508.56 we have just held must be deducted from the settlement for expenses. The distribution to the class

---

[5] Computer-assisted research, $37,317.07; secretarial overtime, $4,150.77; hotel expense, $5,800.00; Tishler & Wald, $15,047.61.

[6] To quote from that order: "The court agrees that the percentage method is the more practical. In fact, an accurate analysis of the voluminous time records submitted in this case would be extraordinarily difficult, if not impossible. Counsel have nonetheless submitted these time records in support of their requested percentage fee, arguing that the time spent is one justification for the requested percentage." (Second Order of May 4, 2006 at 1.)

members would be reduced not only by the expenses, but by an additional amount consisting of a percentage of the expenses. For example, the class would be paying, as fees on top of the expenses, a percentage of the amounts spent by counsel for travel, meals and hotels. Counsels' memorandum in support of their fee petition makes no effort to justify this approach and apparently takes it for granted that this is the way it should be done. But the Seventh Circuit has rejected the argument that the district court is obliged to award a percentage of the gross recovery:

> We begin with class counsel's contention that its fee should be based on the gross settlement recovery-the settlement recovery before counsel's cost award is deducted-rather than the net recovery-the recovery after the cost award is deducted. Counsel cites no authority standing for the proposition that gross recovery is to be preferred over net recovery as the basis for calculating a fee under the percentage-of-recovery method, nor has our review of the relevant case law revealed any authority to that effect. Moreover, counsel has not come forward with evidence indicating that private contingent fee arrangements typically employ one or the other basis, nor has counsel suggested any logical reason that gross recovery should be the preferred basis. As such, it is impossible to conclude that the district court abused its discretion in using net recovery as a basis for awarding attorneys' fees.

Montgomery, 231 F.3d at 408. We will award a percentage of the net recovery, not a percentage of the gross recovery.

The next question is <u>what</u> percentage of that recovery should be awarded. As the Supreme Court said in Hensley v. Eckerhart, 461 U.S. 424, 436 (1983), "the most critical factor is the degree of success obtained." The Court went on to say that "where the

plaintiff achieved only limited success, the district court should award only that amount of fees that is <u>reasonable in relation to the results obtained</u>." <u>Id.</u> at 440 (emphasis added). <u>Hensley</u> dealt with a lodestar fee (in fact, it was the case that established the lodestar approach as the preferred method of determining court-awarded fees), but we can think of no reason the holding does not apply as well to percentage fees. The percentage approach is now permitted in common-fund cases,[7] and we are aware of no case that has held the degree of success is unrelated to the selection of an appropriate percentage. It would be a strange rule that would say that limited success could not justify a large lodestar fee but could justify a percentage yielding the same dollar amount. Therefore, although we have not found a case expressly discussing the point — probably because no one has ever contended otherwise – we hold that the degree of success has the same critical importance in determining percentage fees as it does in determining lodestar fees.

We turn now to the petitioners' arguments in support of their request for fees in the amount of 28 percent of the settlement amount.[8] They state that, "[t]hrough their efforts, Petitioners

---

[7]/"[T]he law of this circuit [is] that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court." <u>Florin v. Nationsbank of Georgia, N.A.</u>, 34 F.3d 560, 566 (7th Cir. 1994).

[8]/ The request is for a percentage of the gross recovery, and, as discussed <u>supra</u> at 9, the percentage we allow will be based on the net recovery. Twenty-
(continued...)

have obtained a significant recovery for the Class," and point out that a percentage of 28 percent is in the range of what is often approved by the judges of this district in common fund cases. (Mem. In Support of Plaintiffs' Counsels' Joint Pet. For an Award of Attorneys' Fees and Reimbursement of Costs and Expenses at 1, 7.) They also emphasize that the combined lodestar of the petitioning firms would come to $5,693,884.50, id. at 8, and that there was a substantial risk of non-payment. Nonetheless, "they collectively risked more than 14,600 hours of labor and incurred more than $744,000 in out-of-pocket expenses in what ultimately was a <u>highly successful result</u> for the Class." Id. at 10 (emphasis added).

Petitioners are obviously aware of the importance of a successful result, but they offer only their conclusory references to success, without explanation. In order to find out more about what was achieved for the class, we entered an order on May 3, 2006 requesting answers to specific questions about the benefit the class members will receive. Counsel responded with the following information. A total of 11,718 class members will share in the settlement. The median number of shares held by class members participating in the settlement is 400. Total recognized claims are $438,817,661. The largest recognized claim is $23,400 and the

---

⁸/(...continued)
eight percent of the net would come to $4,860,937.60.

smallest is $1. The median recognized claim amount is $2,300. The settlement represents a recovery of 19 cents per share, before attorneys fees and expenses.

What this information reveals is that the $18 million gross settlement represents about 4 percent of recognized claims. The net settlement of $17,360,492 is a little less than 4 percent of recognized claims. The distribution to a class member holding the median number of shares (400) will be $78, before deducting attorneys fees and expenses. This means, of course, that the half of the class members owning less than 400 shares will each receive a distribution of less than $78.

If these are good results, it would follow that the claims of the class were virtually worthless to begin with. But we do not assume that experienced class counsel would have undertaken a case with no merit, or spent the time they have recorded on a case they thought would yield so little. Rather, what obviously occurred here is that, for the very reasons we have approved the settlement, counsels' expectations have been overtaken by events, including the bankruptcy of Marchfirst and the emergence of general creditors represented by the bankruptcy trustee. The legal and practical problems discussed in detail in counsels' memorandum requesting final approval of the settlement have caused a reevaluation of the prospects of success and a willingness to accept what the defendants and their insurance companies are willing to offer.

We believe class counsel obtained what may well be the best settlement possible under the circumstances. We had no basis for rejecting their settlement recommendation.[9] But, unfortunately for the class, this has nothing to do with the degree of success achieved. We do not see how a net recovery as small as this one could justify attorneys fees in the $5 million range that counsel are requesting. We believe it would demean the judicial system to allow that request when the median distribution, <u>before</u> deducting fees and expenses, will be less than $80 per class member. In a different but still instructive context (civil rights litigation), the Seventh Circuit has held that the recovery of only a small percentage of the amount demanded can warrant the reduction or outright denial of attorney's fees. <u>See</u> <u>Fletcher v. City of Fort Wayne</u>, 162 F.3d 975, 976 (7th Cir. 1998) (fees denied where settlements were 3.3 percent and 8.3 percent of plaintiffs' demands); <u>Cole v. Wodziak</u>, 169 F.3d 486, 489 (7th Cir. 1999)

---

[9] Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interest of the class and the public. Judges should not substitute their own judgments as to optimal settlement terms for the judgment of the litigants and their counsel.

<u>Gautreaux v. Pierce</u>, 690 F.2d 616, 638 (7th Cir. 1982) (quoting <u>Armstrong v. Board of Sch. Dirs.</u>, 616 F.2d 305, 315 (7th Cir. 1980), <u>overruled on other grounds by</u> <u>Felzen v. Andreas</u>, 134 F.3d 873 (7th Cir. 1998)). <u>See</u> also <u>Ruiz v. McKaskle</u>, 724 F.2d 1149, 1152 (5th Cir. 1984) ("In the absence of fraud or collusion, the trial court 'should be hesitant to substitute its own judgment for that of counsel.'") (quoting <u>Cotton v. Hinton</u>, 559 F.2d 1326, 1330 (5th Cir. 1977); 7B Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 1797 (3d ed. 2005).

("[r]ecovering less than 10% of the demand is a good reason to curtail the fee award substantially."). We view the situation in light of the Seventh Circuit's observation that "inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge." Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 286 (7th Cir. 2002).[10] See also Mirfasihi, 356 F.3d at 783-85, observing that one of the "warning signs" of the unfairness of a class action settlement is "a handsome fee for the class lawyers, despite the meagerness of the relief agreed to in the settlement." Our objective should be to award a fee that is fair but not excessive in relation to what has been achieved for the class.

One of the points urged by petitioners is that they took the risk of working for nothing. This is a common argument in support of large fees in class actions, but it has no relationship to reality. Trials of class actions are an extreme rarity. For practical purposes, they are all settled, and class counsel expect them to be settled. The prospect that class counsel will try the case, lose it and therefore be paid nothing for their efforts is,

---

[10]/ "Class actions were originally created to efficiently address a large number of similar claims by people suffering small harms. Today they are too often used to efficiently transfer the large fees to a small number of trial lawyers, with little benefit to the plaintiffs." Fears v. Wilhelmina Model Agency, Inc., No. 02-Civ. 4911 (HB), 2005 WL 1041134, at *5 (S.D.N.Y. May 5, 2005).

in the experience of almost all class action lawyers, a mere whimsy. Attorneys fees are paid out of the settlement proceeds, just as will happen here. The size of the fees may not be what counsel would like, because the recovery may be smaller than they would like. But there will virtually always be some recovery by way of settlement, and counsel will receive fees at least equal to the reasonable value of what they have accomplished. In this case, the recovery is small and the return to the individual class members is a token. In that situation, who should bear the consequences of the small recovery – the class members alone, or the class members and their attorneys? The only fair answer in our opinion is that the consequences of the small settlement must be shared by attorney and client. <u>Hensley</u> permits no other result.

If 28 percent is excessive — and we think it clearly is – then what is a reasonable percentage? There is no formula for arriving at a "right" result, and opinions can differ. We are not disposed to award token fees just because there is a token recovery. Counsel tried hard and the shortfall was not of their doing. On the other hand, there has to be recognition of the fact that their services yielded little of consequence to the class.

This court has a duty to the class members to see to it that their already small recovery is not further diminished by excessive fees. It has a duty to class counsel to be fair and balanced in considering their claim for compensation. Finally, it has a duty

to the public to reach a judgment that will not only be fair, but will have the appearance of fairness.  We have concluded that a fee of 15 percent of the net settlement of $17,360,492, or $2,604,073.80, is the highest we can award consistent with these objectives.  We will round the number off to $2,605,000.

### Conclusion

The class settlement in the amount of $18,000,000.00 will be approved.  Class counsel will be allowed reimbursement of expenses in the amount of $639,508.56 and attorneys' fees in the amount of $2,605,000.  A separate order so providing will be entered this date.



   DATE:     July 12, 2006


   ENTER:    _____
             John F. Grady, United States District Judge